IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| TAMMI JENKINS | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. TMD 10-406M |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant. | ) | |

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Tammi Jenkins ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.§§ 401-433. Before the Court are Plaintiff's Motion for Summary Judgment (or Remand) (Pl.'s Mot. Summ., ECF No. 11) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 18). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff protectively filed her application for SSI on February 23, 2007 alleging disability since November 19, 2003 (subsequently amended to February 23, 2007) on the basis of left arm and left leg weakness, stroke, asthma, obesity, hypertension and sleep apnea. R. at 10, 20, 25-28, 75-81. Her claim was denied initially and on reconsideration. R. at 47-50, 54-55.

On March 30, 2009, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff and a Vocational Expert ("VE") testified. R. at 18-42. Plaintiff was represented by counsel. In a decision dated July 12, 2009, the ALJ denied Plaintiff's request for benefits. R. at 10-17. The Appeals Council denied review on January 16, 2010 making the ALJ's decision the final decision of the Commissioner subject to judicial review. R. at 1-3.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim for SSI using the sequential process set forth in 20 C.F.R. § § 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: obesity, asthma and cerebrovascular disease. At step three, the ALJ found that her impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that Plaintiff had no past relevant work. At step five, the ALJ concluded that given her residual functional capacity ("RFC"), there are jobs that exist in significant numbers in the national economy that Claimant could perform. Accordingly, he concluded that Claimant was not disabled within the meaning of the Social Security Act. R. at 10-17.

## III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

## IV. Discussion

Plaintiff contends that (1) the ALJ failed to give proper weight to the opinion of her treating physicians; (2) the ALJ erroneously found Plaintiff did not meet Listing 11.04B and 3.03B; and (3) the ALJ relied upon an improper hypothetical to the VE.

### A. Treating Physician Rule

Plaintiff argues that the ALJ did not accord appropriate weight to the opinions of both Dr. Punnam and Dr. Matthews . Dr. Punnam, who began treating Claimant in May, 2005, completed a Medical Assessment Report in which he indicated Claimant's conditions would cause substantial restrictions in her ability to do work. Specifically, Dr. Punham indicated that Claimant's "severe asthma" and "prior CVA" ("cerebrovascular accident") would prevent her from remaining seated for six out of eight hours, from remaining on her feet two out of eight hours and from lifting objects weighing up to 10 pounds on a sustained, regular and continuing

basis. R. at 366. The ALJ specifically addressed the opinion provided by Dr. Punnam in his decision but found that it was not entitled to controlling weight because it was not supported by the record, including his own treatment notes. R. at 14. Although Dr. Punnam indicated Claimant suffered from "severe" asthma, his diagnosis was only "moderate" asthma. R. at 14, 303, 305, 309, 310, 311, 365.[1] In addition, he did not provide any rationale for his opinion that her asthma prevents her from sitting for long periods of time despite the fact that sitting does not involve any exertion or musculoskeletal activity. Moreover, with respect to her asthma, the ALJ cited other evidence in the record which supports his decision to not afford Dr. Punnam's opinion controlling weight including that her asthma had not prevented her from working in the past, she denied shortness of breath on occasion, and that even during an acute asthma attack, she was able to walk to and from her bedroom without distress. R. at 14, 371. He also cited the findings of consultative examiner, Dr. Cohen, who noted that Claimant had no difficulty standing, walking, sitting, lifting, carrying or handling. R. at 14, 278-81. Dr. Cohen further found that Claimant did not suffer from restriction in range of motion of the spine or major joints, possessed normal gait and station, normal ability to bear weight, no need for ambulatory aid, no complaints of chest pain. R. at 279-80. Dr. Cohen also noted normal breath sounds, no dullness, wheezing, rales or coughs. R. at 280. *See also* R. at 13, 246 (ALJ discussing Dr. Kolli's opinion that left sided weakness was "minimal"); R. at 14, 322, 323, 325 (May 2007 examination showing full range of motion and good muscle tone); R. at 14, 379, 381 ("mild"

---

[1] The ALJ incorrectly stated that the treatment records reflected "mild" asthma. In light of the discussion above, the citation error was harmless.

left sided weakness noted during "numerous" examinations). There is substantial evidence to support the ALJ's decision to not afford Dr. Punnam's opinion significant weight.[2]

B.  Listing 11.04B and 3.03B

Plaintiff next argues that the ALJ should have found that she meets Listing 11.04B which requires"[s]ignificant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." The Listing requires the disturbance to persist for more than three months after a "central nervous vascular accident." It then directs the reader to 11.00C, which states, in part, that the persistent disorganization of motor function may be "in the form of sensory disturbances ... which may be due to ... peripheral nerve dysfunction." Additionally, 11.00C notes that "[t]he assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms."

In addressing whether Claimant met Listing 11.04, the ALJ concluded that she did not suffer from the required disorganization of motor function to meet a listing due to her cerebrovascular accident. R. at 12. The ALJ discussed the fact that Claimant suffered from a stroke in November, 2003 after which she had left sided weakness (both lower and upper extremity) and slurred speech. R. at 13. However, the ALJ further noted that these conditions

---

[2] For similar reasons, there is substantial evidence supporting the ALJ's decision not to afford controlling weight to the opinion of Plaintiff's treating physican, Dr. Matthews. R. at 14, 15, 413. As the ALJ indicated, his ultimate opinion that Plaintiff met a listing did not cite supporting evidence and is an issue reserved for the Comissioner.

improved "well before the alleged onset date" and that by January of 2007, her left sided weakness was noted to be "minimal." R. at 13, 246-47, 379, 381. Although the ALJ noted that she continued to have some symptoms in her left hand after the alleged onset date, her medications for residuals were limited to simple aspirin. R. at 14. The ALJ also noted that an examination on May 15, 2007 showed normal range of muscle tone and motion. R. at 14, 323. Additionally, the findings of consultative examiner , Dr. Cohen, discussed in detail above support the ALJ's finding that Claimant did not meet Listing 11.04B.

The Court also rejects Plaintiff's contention that the ALJ erred in not finding her disabled under Listing 3.03B, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03B (asthma with attacks). Listing 3.03B requires Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or a least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks. "Attacks" are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." *Id*. § 3.00C.

Plaintiff directs the Court's attention to the fact that Claimant "presented" at the Emergency Room on January 14, 2007, January 25, 2007 and March 26, 2007 and was admitted on two of these occasions. R. at 246, 381, 398-99. She argues that, accordingly, this constitutes 5 attacks per year. She further argues that her admission to the ICU on December 3, 2007 with

6

respiratory failure completes the requisite consecutive 12-month period prescribed by the Listing. R. at 376.

The ALJ specifically addressed Listing 3.03B and found that "[a]lthough the claimant has had emergency room visits for breathing related difficulties, these have not been with the frequency to meet listing levels." R. at 12. He noted, for example, that the claimant had a qualifying hospitalization in January of 2007 but this was due to an acute infection that exacerbated her asthma symptoms and "[did] not reflect the general course of her asthma." *Id*. This finding is supported by the record which demonstrates that Claimant suffered asthma exacerbation due to pneumonia. R. at 246-47. Moreover, while Plaintiff asserts that she was admitted to the ICU on December 3, 2007 due to respiratory failure, the record actually evidences that Claimant was already in the hospital as of November 30, 2007 for planned ovarian surgery, R. at 376, and that her respiratory issues were breathing issues related to "abdominal distention." R. at 377. Accordingly, the ALJ is correct that Plaintiff did not suffer from attacks with the frequency required under Listing 3.03B.[3]

    C.    <u>Hypothetical to the VE</u>

---

[3] Additionally, the Listing indicates that for "asthma, the medical evidence should include spirometric results obtained *between* attacks that document the presence of baseline airflow obstruction." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00C. The ALJ did not indicate that the Listing "requires" such tests as Plaintiff contends. Rather, the ALJ noted that Claimant "does not have the pulmonary function test result described in the listings." R. at 12. While Plaintiff directs the Court's attention to the tests performed on March 27, 2007, those tests were taken *during* (not between) one of her hospitalizations at which time she was admitted for exacerbation of her asthma, R. at 381-83, 397.

Plaintiff argues that the ALJ's hypothetical to the VE was incomplete as it did not lay out all of her impairments. The ALJ need only include impairments that are supported by the evidence in the record. *See Mickles v. Shalala*, 29 F.3d 918, 927 n.7 (4th Cir. 1994). The Court has reviewed the alleged omissions and finds that the ALJ was not required to include them in the hypothetical as they were not supported by the record. For example, despite Plaintiff's insistence that the ALJ should have included a limitation that Plainitiff berequied to use a cane, the ALJ found she did not need a cane to ambulate effectively. R. at 14, 15. He cited Dr. Cohen's examination results in which he noted that Claimant had a cane but did not use it nor was there a need for it. She walked around his office without difficulty. R. at 278-83.

In addition, despite Plaintiff's argument that the hypothetical did not include the mental impairments expressed by Dr. Edmunds, (Pl.'s Mot. Summ., ECF No. 11 at 29), the ALJ specifically asked the VE to incorporate those limitations "set forth in 12F" which was, in fact, Dr. Edmund's assessment. R. at 38. The Court has reviewed the remaining assertions of alleged error with respect to the hypothetical and finds them equally without merit.

## V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.

Date: May 24, 2011                                  _____/s/_____
                                                    THOMAS M. DIGIROLAMO
                                                    United States Magistrate Judge

Copies to:
Vincent J. Piazza
6716 Harford Rd.
Baltimore, MD 21234

Allen F. Loucks
Assistant United States Attorney
United States Courthouse
101 West Lombard Street
Baltimroe, Maryland 21201-2692